# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEWART J. GROSS** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 23-0633** |
| **v.** | : | |
| | : | |
| **HATBORO-HORSHAM SCHOOL** | : | |
| **DISTRICT** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                    JULY 31, 2023

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiff Stewart J. Gross ("Plaintiff") filed this employment discrimination action against his former employer, Defendant Hatboro-Horsham School District ("Defendant" or "Hatboro-Horsham"), under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*; the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 *et seq.*; and the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.* [ECF 1]. Plaintiff's claims of disparate treatment and hostile work environment are premised on allegations that upon his return from a year-long medical leave, the principals, assistant principals, and staff at Keith Valley Middle School within the Hatboro-Horsham School District treated him differently than they treated the younger, nondisabled teachers, and created such intolerable working conditions that caused him to retire.

Before this Court is Defendant's motion to dismiss Plaintiff's complaint in its entirety. [ECF 5]. Plaintiff opposes the motion. [ECF 8]. For the reasons set forth, Defendant's motion is denied.

**BACKGROUND**

When ruling on a motion to dismiss, this Court must accept as true all factual allegations in the complaint and construe the facts alleged in the light most favorable to the non-moving party—here, Plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). The facts relevant[1] to the underlying motion are as follows:

Plaintiff, who is currently sixty-two years old, was employed as a teacher for thirty-five years by Defendant. Prior to his 2023 retirement, Plaintiff worked at Keith Valley Middle School ("KVMS") as a seventh-grade English Language Arts teacher. During all relevant time, Plaintiff was over the age of forty and suffered various medical conditions, including a heart condition, high blood pressure, and dysautonomia, a neurological condition.

For the 2014–15 school year, Plaintiff was on medical leave due to a "serious health condition." (Compl. Ex. A, ECF 1-1, at p. 1). When he returned to work for the 2015–16 school year, Plaintiff was the subject of derisive comments and conduct from teachers and administrators at KVMS, false accusations from assistant principals at KVMS, an unsubstantiated disciplinary hearing, and various instances of being singled out by school administrators, described more fully *infra*. Plaintiff alleges that younger and nondisabled teachers were not subject to similar treatment. This treatment persisted continuously until Plaintiff's second medical leave, which began in February 2022.

*Disparaging Comments and Treatment*

Plaintiff alleges that upon his return to work in 2015, KVMS Principal Jonathan Kircher "sarcastically remarked [to Plaintiff], 'Now I know all about your health, just like my dad.'" (Compl. Ex. A, ECF 1-1, ¶ a). Principal Kircher told Plaintiff that Kircher's father was retired because of medical conditions similar to Plaintiff's and that Plaintiff's condition was worse than that of Kircher's father. During that same school year, teacher Wendy King "repeatedly inquired" as to when Plaintiff planned to retire from teaching. (*Id.* ¶ b).

In October of 2016, Assistant Principal John Ewerth asked how many years he had left before retiring. When Plaintiff asked Assistant Principal Ewerth why he wanted to know, Assistant Principal Ewerth told Plaintiff, "I'm thinking you're getting ready to retire." (*Id.* ¶ c). In April of 2017, Assistant Principal Ewerth

---

[1] Plaintiff's allegations are derived from his Equal Employment Opportunity Commission ("EEOC") Complaint, which was attached as Exhibit A to Plaintiff's Complaint and incorporated therein. [ECF 1-1].

shouted down the hallway, in front of Plaintiff and KVMS teacher Jim Iaia, that everything Plaintiff did was "like a pussy." (*Id.* ¶ e).

In March of 2018, a police cruiser followed Plaintiff around the school parking lot. An unnamed building support staff employee told Plaintiff she "overheard [Principal] Kircher and [Guidance Counselor Andy] Osborne talking about 'having some fun with Stewart Gross.'" (*Id.* ¶ h).

*False Accusations*

As to the false accusations, Plaintiff contends that Principal Kircher and three assistant principals also levied false accusations against Plaintiff after his return from his first medical leave. In February of 2018, Principal Kircher falsely accused Plaintiff of sleeping in class and having drugs in his classroom. In February of 2019, Principal Kircher falsely accused Plaintiff of using the N-word in his classroom and threatened disciplinary action. Principal Kircher never followed through with the threatened discipline.

In October 2017, Assistant Principal Ewerth accused Plaintiff of not being prepared for "PSA test[ing]" based on a pile of books lying face-down in Plaintiff's classroom, which could "give kids ideas" during the testing. (*Id.* ¶ d). Plaintiff alleges that other teachers had posters and books in view of students in their classrooms, but Ewerth accused only Plaintiff of being unprepared.

In September 2020, Assistant Principal Kai-Morris Coleman falsely accused Plaintiff of not instructing students properly during remote learning. In February 2021, Plaintiff was given a mediocre rating in an employee evaluation by another assistant principal based on a false accusation that students were not participating during remote learning.

*Differential Treatment*

As for the differential treatment, Plaintiff alleges that his classroom was "subjected to drug test[ing] more frequently than other teachers' rooms [] in a manner that [was] not 'random.'" (*Id.* ¶ f). During Spring of 2018, Guidance Counselor Osborne, a good friend of Principal Kircher, repeatedly disturbed Plaintiff's classroom by "oddly peek[ing]" into Plaintiff's classroom at least a dozen times during the semester. (*Id.* ¶ g). Other younger, nondisabled teachers were not subjected to this treatment. At the time, none of Plaintiff's students was assigned to Osborne for guidance counseling purposes. In October of 2018, Osborne disturbed Plaintiff's classroom again. When Plaintiff confronted Osborne about the behavior, Osborne walked away silently.

Plaintiff also alleges that he received "glowing classroom walk-through observations," coached two sports programs at KVMS, and supervised a student project for which his students won an award. Notwithstanding his efforts,

commendations, and achievements, Plaintiff received only an "average proficient" rating in his employee evaluation that did not mention of the glowing walk-through observations.  (*Id.* ¶ k).  Upon review of his employee file, Plaintiff noticed that one of the most glowing observations was not included in the file.

Plaintiff was also assigned an "inordinate amount" of students with behavioral issues in the 2021–22 school year.  (*Id.* ¶ h).  The eight students who, according to the sixth-grade teachers, had the most issues with academics, behavior, and truancy were all assigned to Plaintiff's classroom for the 2021–22 school year. KVMS administrators did not subject younger, nondisabled teachers to similar treatment.

*Disciplinary Hearing*

On December 7, 2021, Plaintiff had a "major behavioral incident" with one of his students.  (*Id.* ¶ o).  Plaintiff wrote an email to Principal Kircher about the student, indicating he did not want the student to return to his class until there was a meeting between Plaintiff, the student, and Principal Kircher.  Instead of the meeting that Plaintiff had requested before bringing the student back into the classroom, Principal Kircher and Assistant Principal Coleman met with Plaintiff alone on December 8, 2021.  During the meeting, Principal Kircher and Assistant Principal Coleman accused Plaintiff of writing a negative email about the student and stated that a disciplinary hearing against Plaintiff would soon follow "to go over 'every line of [Plaintiff's] letter.'"  (*Id.* ¶ p).

On December 14, 2021, Plaintiff met with Principal Kircher and Hatboro-Horsham Education Association ("HHEA") President Bryan Moore, as well as the Hatboro-Horsham solicitor, the HHEA human resources director, and the Pennsylvania State Education Association Mideastern Region Uniserve representative.  During that meeting, Principal Kircher questioned Plaintiff about his "conduct," but not about the student's behavior or the issues that precipitated the email.  (*Id.* ¶ q).  After the meeting, Plaintiff never received any follow-up communication from Principal Kircher or anyone else who attended the meeting.

*Second Medical Leave and Retirement*

Plaintiff contracted COVID-19 and was out sick between January 4, 2022, and January 14, 2022.  On January 18, 2022, Plaintiff was "told for the first time" by an unnamed person that he would be deposed regarding a lawsuit involving a student and Hatboro-Horsham.[2]  (*Id.* ¶ s).  Plaintiff was the only seventh-grade teacher required to give a deposition.

On January 21, 2022, Plaintiff attempted to review the student guidance files, including the file of the student involved in the lawsuit.  When Guidance

---

[2]      Plaintiff does not allege that the lawsuit between the student and Defendant has any relation to the instant case.

Counselor Osborne saw Plaintiff looking at the files, Osborne "yelled at" Plaintiff and took the files back.  (*Id.* ¶ t).  Plaintiff then asked HHEA President Moore whether he could review the files, and Moore told Plaintiff that he "had every right to review the files."  (*Id.* ¶ a).

On February 3, 2022, Plaintiff returned home from work and took his blood pressure, which registered as high.  The following day, Plaintiff met with his cardiologist, who administered an electrocardiogram (EKG) and echocardiogram, which were abnormal.  Plaintiff's cardiologist removed Plaintiff from work indefinitely.  Plaintiff notified Defendant of his retirement about a year later, on February 6, 2023.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) governs motions to dismiss, providing that a complaint must be dismissed when it fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the plaintiff must plead enough facts, taken as true, to plausibly show the plaintiff is entitled to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fed. R. Civ. P. 12(b); *Fowler*, 578 F.3d at 210–11.  The plaintiff must support legal conclusions with factual allegations, and the court should assume the veracity of the factual allegations when considering whether they "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679; *see also Fowler*, 578 F.3d at 210–11; *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 322 (3d Cir. 2008).  Plausible does not mean possible or probable, but rather that the plaintiff has pleaded enough facts such that the court can draw a reasonable inference that the defendant has violated the law.  *Id.* at 678.

At the motion to dismiss stage, the court "may not consider matters extraneous to the pleadings."  *In re Burlington Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)).  However, the court may rely on documents "integral to or explicitly relied upon in the complaint."  *Id.* (citing *Shaw v. Digit. Equip.*

*Corp.*, 82 F.3d 1194, 1220 (3d Cir. 1996)).  As noted, Plaintiff's allegations are gleaned from his

EEOC Complaint, attached as Exhibit A to Plaintiff's Complaint.[3]  Thus, the Court will consider

Plaintiff's June 3, 2022 EEOC Charge of Discrimination in evaluating the motion to dismiss.

**DISCUSSION**

As noted, Plaintiff asserts several claims against Defendant for the treatment he endured at

KVMS in the years leading to his retirement, *to wit*:  discrimination and hostile work environment

claims under the ADA; discrimination and hostile work environment claims under the ADEA; and

state-law discrimination and hostile work environment claims under the PHRA.  Because the

ADEA, the ADA, and Title VII of the Civil Rights Act of 1964 are nearly identical and serve the

same purpose—preventing discrimination in the workplace—"the methods and manners of proof

under one statute should inform the standards under the other as well."  *Walton v. Mental Health*

*Ass'n of Se. Pa.*, 168 F.3d 661, 666 (3d Cir. 1999) (quoting *Newman v. GHS Osteopathic, Inc.*, 60

F.3d 153, 157 (3d Cir. 1995)) (noting that when there is no material difference in the question being

addressed, the court will treat Title VII and ADEA caselaw as interchangeable).[4]

Defendant moves to dismiss Plaintiff's claims on the basis that (1) the claims are untimely

and (2) Plaintiff has failed to state a claim.  This Court will address each of Defendant's arguments

in turn.

---

[3]    On June 3, 2022, Plaintiff dual-filed his charge of discrimination with the EEOC and Pennsylvania Human Relations Commission ("PHRC").  On January 31, 2023, the EEOC issued a dismissal of charges and a right to sue notice.

[4]    Pennsylvania courts have interpreted the PHRA in accordance with its federal counterpart statutes, including the ADA and ADEA.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (citing *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083–84 (3d Cir. 1995)).  Likewise, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has expressly applied equal analysis between the ADEA and PHRA.  *See Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021); *see also Fasold v. Justice*, 409 F.3d 178, 184 n.8 (3d Cir. 2005) (stating the PHRA should be applied identically to federal anti-discrimination law unless the language of the statutes expressly differs)).  As such, this Court will analyze Plaintiff's PHRA claims as coextensive with his ADA and ADEA claims.

### *Timeliness*

Defendant argues that all of Plaintiff's employment discrimination claims are untimely because they were not commenced within the applicable statutory time limits.  Plaintiff disagrees and argues that his claims are timely because (1) his discrimination claim is premised on his constructive discharge—a discrete act that occurred within the statutory period—and (2) his hostile work environment claims are premised on the continuing violation theory.

Prior to filing a cause of action in federal court, a plaintiff seeking to bring an employment discrimination claim in federal court under the ADA, ADEA, and PHRA must exhaust "all required administrative remedies."  *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (citing *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)); *see* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626; 43 Pa. Cons. Stat. § 959(h); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  Generally, a plaintiff must commence the administrative exhaustion process by filing a charge of discrimination under the EEOC within 180 days of the alleged unlawful employment practice.   42 U.S.C. § 2000e-5(e)(1).   However, in a "deferral state," like Pennsylvania, the 180-day EEOC time limit is increased to 300 days when the aggrieved individual first or simultaneously institutes proceedings with the governing state or local agency. *Id.* § 2000e-5(e)(1).  After a plaintiff files an EEOC complaint and receives a dismissal notice and right-to-sue letter from the EEOC, the claim is considered exhausted, and the plaintiff may bring suit in federal court.  *Mandel*, 706 F.3d at 163 (citing *Robinson*, 107 F.3d at 1020–21).  Here, Plaintiff is subject to the 300-day requirement when filing his administrative charge of discrimination with the EEOC, 42 U.S.C. § 2000e-5(e)(1), and the 180-day requirement when filing with the PHRC, 43 Pa. Cons. Stat. § 959(h).

A cause of action for employment discrimination accrues, and the statute of limitations begins to run, when the plaintiff knows or has reason to know of the injury that is the basis for the action. *Burkhart v. Widener Univ. Inc.*, 70 F. App'x 52, 53 (3d Cir. 2003). "In a discrimination case, the focus is on when the discriminatory act occurs, not when the consequences of that act become painful." *Id.* (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)). When a claim is premised on an adverse action, such as "termination, failure to promote, denial or transfer, or refusal to hire," the court may readily identify when the claim accrued on the face of the pleadings. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

> "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 112. Discrete acts such as "termination, failure to promote, denial of transfer, or refusal to hire" are easily identifiable, and those discrete acts that fall outside the time period are not actionable. *Id.* at 115. However, such time barred acts can be used as "background evidence" to support a timely claim. *Id.* at 112.

*Emmell v. Phoenixville Hosp. Co.*, 303 F. Supp. 3d 314, 325 (E.D. Pa. 2018).

Claims of hostile work environment often are not discrete adverse employment actions. *See Mandel*, 706 F.3d at 165. At times, an individual discriminatory act is not actionable on its own, but in the aggregate such act may amount to a hostile work environment. *See id.* Therefore, the court must look at the alleged facts to determine which, if any, amount to discrete adverse employment actions. *See id.* at 166 (indicating that the court must distinguish between isolated occurrences and patterns of discrimination); *see also O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (noting that the court must typify allegations by either discrete acts or those allegations that, in the aggregate, amount to a hostile work environment).

### I.   *Timeliness of the Constructive Discharge Claims*

Both the ADA and ADEA require that a plaintiff allege an adverse employment action to state a discrimination claim.  *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998) (citing *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)).  Here, Plaintiff alleges that he suffered an adverse employment action when he was constructively discharged from his teaching position with Defendant.[5]  In response to Defendant's timeliness argument, Plaintiff argues that following the series of unfortunate events during the 2021–22 school year, Plaintiff's cardiologist indefinitely removed him from his teaching position in February 2022.  Plaintiff never returned to work and eventually retired.

Plaintiff argues that based on the series of events in 2021, his constructive termination or discharge occurred in February 2022 when he was forced to leave his employment on doctor's orders.  Plaintiff filed his administrative charges with the EEOC and PHRC on June 3, 2022, approximately four months (or 120 days) after his alleged constructive discharge.  Because Plaintiff filed his charges well within the 300-day limitations period for the EEOC and the 180-day limitations period for the PHRC, this Court finds that Plaintiff's employment discrimination claims under the ADA and ADEA, premised on his constructive discharge, are timely.  *See* 42 U.S.C. § 2000e-5(e)(1); 43 Pa. Cons. Stat. § 959(h).

### II.   *Timeliness of the Hostile Work Environment Claims*

As to Defendant's timeliness challenge to Plaintiff's hostile work environment claims, Plaintiff argues that these claims are also timely under the *continuing violation doctrine*.  This doctrine is an "equitable exception" to the EEOC and PHRC's timely filing requirement for cases where the defendant's conduct is part of a continuing practice of discrimination. *Shenkan v. Potter*,

---

[5]      Further analysis concerning whether Plaintiff has alleged sufficient facts to sustain the constructive discharge claims will follow later in this memorandum.

71 F. App'x 893, 894–94 (3d Cir. 2003) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir.

2001)).  The Third Circuit summarized this exception and its requirements as follows:

> Under the continuing violation doctrine, discriminatory acts that are
> not individually actionable may be aggregated to make out a hostile
> work environment claim; such acts "can occur at any time so long
> as they are linked in a pattern of actions which continues into the
> applicable limitations period." *O'Connor*, 440 F.3d at 127 (citing
> *Morgan*, 536 U.S. at 105) (explaining court may consider "entire
> scope of a hostile work environment claim . . . so long as any act
> contributing to that hostile environment takes place within the
> statutory time period")).  A hostile work environment claim "is
> composed of a series of separate acts that collectively constitute one
> 'unlawful employment practice'" and "cannot be said to occur on
> any particular day."  *Morgan*, 536 U.S. at 115–17.  To allege a
> continuing violation, the plaintiff must show that all acts which
> constitute the claim are part of the same unlawful employment
> practice and that at least one act falls within the applicable
> limitations period.  *See Morgan*, 536 U.S. at 122; *see also West v.
> Phila. Elec. Co.*, 45 F.3d 744, 754–55 (3d Cir. 1995) (explaining
> plaintiff must show that at least one act occurred within the filing
> period and that the harassment is "more than the occurrence of
> isolated or sporadic acts of intentional discrimination").

*Mandel*, 706 F.3d at 165–66.

Here, in his complaint, Plaintiff has alleged at least an instance of discrimination occurring

within the applicable statute of limitations.  Specifically, Plaintiff alleges that in January 2022, he

was singled out to be deposed in a lawsuit involving a student and Hatboro-Horsham.  Plaintiff

was informed that he would be deposed on the day of the deposition (just four days after he

returned to work after contracting COVID-19), and then was berated by Osborne for reviewing

that student's files when he "had every right to."  (Compl. Ex. A., ECF 1-1, ¶ t).  This alleged

discriminatory act occurred within the time period for Plaintiff to file a timely claim.

In his complaint, Plaintiff also alleges several other discriminatory acts that occurred *prior

to* and outside the applicable limitations period involving similar conduct by many of the same

individuals.  For example, Plaintiff alleges that he was subjected to numerous false accusations,

followed by the police around the school parking lot at the behest of Principal Kircher, and called a "pussy" by Assistant Principal Ewerth.  (*Id.* ¶ e).  These actions suggest an ongoing pattern creating a hostile environment.  At this stage, this Court finds that these alleged facts are sufficient to plausibly show entitlement to relief on both of Plaintiff's hostile work environment claims based on the continuing violation doctrine.  *See Mandel*, 706 F.3d at 166.

Based on the foregoing analysis, this Court finds Plaintiff's claims were timely filed.

### *Failure to State a Claim*

Defendant also argues that Plaintiff has failed to state a claim under the ADA, the ADEA, and the PHRA.  Specifically, Defendant argues that Plaintiff has failed to plead facts to show (a) an adverse employment action sufficient to sustain his discrimination claims or (b) severe or pervasive discrimination to support his hostile work environment claims.  Plaintiff disagrees.

To plead employment discrimination under the ADA or ADEA, the plaintiff must plead facts in support of ***all of*** the *prima facie* elements of each claim.  *See Fowler*, 578 F.3d at 212 (evaluating an employment discrimination claim on pleadings by discussion of facts supporting each *prima facie* element of the claim).  It is not enough to plead facts supporting some, but not all, of the elements of a *prima facie* case of discrimination.  *See id.*  To survive a motion to dismiss, the plaintiff is not required to ***establish*** the elements of a *prima facie* case, an evidentiary standard, but rather must ***plead*** sufficient facts such that the allegations raise the expectation that discovery will reveal evidence for each element.  *Id.* at 213 (citing *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671, at *4 (W.D. Pa. June 4, 2008)); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).[6]

---

[6]      In its motion to dismiss, Defendant relies on *Mejias v. C&S Wholesale Grocers, Inc.*, which notes that plaintiffs need only plead facts plausibly alleging some, but not all, of the *prima facie* elements of an employment discrimination case.  2020 WL 3971021, at *3 (E.D. Pa. July 14, 2020).  This is not, however,

### I.    ADA Claims

#### A.    Discrimination

As noted, Plaintiff asserts that he was constructively discharged because of his disability in violation of the ADA.  Defendant moves to dismiss this claim, arguing that Plaintiff has not alleged a "single, legitimate adverse action that was taken against" him due to his disability. (Def.'s Br., ECF 5-1, at p. 12).  Defendant also argues, in a single sentence relegated to a footnote, that Plaintiff has failed to allege facts illustrating how Plaintiff's disability interferes with his ability to work.  Finally, Defendant argues that Plaintiff has failed to plead facts showing that the adverse action he suffered was as a result of his disability.  Defendant's arguments are, however, misguided at this stage of the proceedings.

To assert a discrimination claim under the ADA, a plaintiff must allege facts sufficient to plausibly show that:  (1) the plaintiff is disabled under the ADA; (2) the plaintiff can perform the essential functions of his job, with or without reasonable accommodations from his employer; and (3) he has suffered an adverse employment decision (4) as a result of the discrimination.  *Gaul*, 134 F.3d at 580 (citing *Shiring*, 90 F.3d at 831).  In his complaint, Plaintiff avers that he is disabled due to a heart condition, high blood pressure, and dysautonomia.  Prior to his alleged constructive discharge, Plaintiff had been a teacher for over thirty-five years.  Plaintiff also avers that he was forced to retire against his will.

---

the correct standard.  The *Mejias* court cites *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), a case overruled by *Twombly* and *Iqbal*.  *See Fowler*, 578 F.3d at 211 (holding that courts should not rely on *Swierkiewicz* insofar as courts have previously relied on the now-overturned "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41 (1957), because *Swierkiewicz* allowed a plaintiff to plead an employment discrimination case under the "no set of facts" standard).  Plaintiff also relies on this lowered pleading standard in his brief in opposition.  (Pl.'s Resp. in Opp., ECF 8-1, at p. 3) ("Moreover, for the purpose of stating a claim of discrimination, a [p]laintiff is not required to meet all the elements of a *prime facie* case, since that is an evidentiary, and not a pleading standard . . . .") (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

An adverse employment action occurs when an employer "discharges, refuses to hire, or makes a decision that is serious enough to alter the employee's compensation, terms, conditions, or privileges of employment." *Grossberg v. Hudson Cnty. Dep't of Hum. Servs.*, 740 F. App'x 762, 764 (3d Cir. 2018) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997); 42 U.S.C. § 2000e-2(e)).  Voluntary retirements are not adverse employment actions. *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999).  An employee's retirement is presumed to be voluntary unless an employee alleges facts supporting the retirement's involuntary nature. *Id.*  A retirement may be considered a constructive discharge—and, thus, an adverse employment action—when the plaintiff alleges facts to support the notion that the "employer knowingly permit[ted] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006) (citing *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 887 (3d Cir. 1984)).  This objective test requires that the alleged working conditions be "intolerable." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir. 1992) (citing *Goss*, 747 F.3d at 887–88) ("[T]he conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign.") (internal quotations omitted)). "Intolerable" does not mean that a reasonable person would view retirement as the best decision in the plaintiff's circumstances; rather, intolerable means a reasonable person would feel "*compelled* to resign" if they were in the plaintiff's position. *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998) (citation omitted).

Constructive discharge claims are highly fact-specific and, generally, are not appropriate for judgment prior to discovery. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.7 (3d Cir.

2006) ("It would have been inappropriate for the District Court to decide that fact-intensive question [of constructive discharge] in the context of a 12(b)(6) motion.").  That is:

> "Claims of constructive discharge are highly fact-specific and depend upon the particular circumstances and evidence of each case," making this claim "unsuitable for judgment on the pleadings." *Lebofsky v. City of Philadelphia*, 2007 WL 1217874, at *4 (E.D. Pa. Apr. 24, 2007); *Levendos v. Stern Ent., Inc.*, 860 F.2d 1227, 1230 (3d Cir. 1988) ("Constructive discharge is a heavily fact-driven determination." (internal quotation marks omitted)). Because of this, it is often "inappropriate for the district court to decide that fact-intensive question in the context of a 12(b)(6) motion." *Hill*, 455 F.3d at 233 n.7; *Niehoff v. SPS Techs., Inc.*, No. 16-3301, 2016 WL 6648618, at *5 (E.D. Pa. Nov. 10, 2016) ("It is not appropriate for the court to delve into such a 'fact-intensive question' of constructive discharge on a motion to dismiss under Rule 12(b)(6)").

*Thompson-Lyons v.  Cmty. Dental of Hamilton, P.C.*, 2022 WL 3354729, at *3 (D.N.J. Aug. 12, 2022) (alterations omitted).

Here, Defendant contends that Plaintiff has failed to allege facts to support an actionable constructive discharge under *Stucke v. City of Philadelphia*, 2015 WL 2231849, at *5 (E.D. Pa. May 12, 2015), *aff'd*, 685 F. App'x 150 (3d Cir. 2017).  Defendant's reliance on *Stucke* is misplaced.  The *Stucke* court, relying on the Third Circuit's decision in *Colwell v. Rite Aid*, enumerated a list of factors relevant to the determination of whether a plaintiff suffered a constructive discharge.  *Id.* (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010)).  Both the *Stucke* and *Colwell* courts, however, considered and applied these factors when adjudicating the defendants' **motions for summary judgment**.  *Id.* at *1; *Colwell*, 602 F.3d at 498.  The factors discussed and applied in *Stucke* derive from the Third Circuit's approach to assessing **evidence at the summary judgment stage** and are, therefore, not appropriate for determining whether Plaintiff has stated a claim for constructive discharge at the pleading stage.  Clearly, at the motion to dismiss stage, "an evidentiary standard is not a proper measure of whether a complaint

fails to state a claim." *Fowler*, 578 F.3d at 213 (citing *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir. 1999)).  Thus, the chief inquiry is whether Plaintiff has alleged sufficient facts to plausibly allege constructive discharge based on the circumstances leading up to his retirement.  Any inquiry into whether a reasonable person would have felt compelled to resign in Plaintiff's position is appropriately reserved for the factfinder, not this Court at the motion to dismiss stage.  *See Hill*, 455 F.3d at 233 n.7.  Based on the allegations in the complaint, this Court finds that Plaintiff has plausibly alleged, at this stage, facts sufficient to show that he was subjected to an adverse employment action.

Defendant also argues, in a single-sentence footnote, that Plaintiff has not alleged how his medical condition "actually" interfere[d] with his ability to work.  (Def.'s Br., ECF 5-1, at p. 12).  At best, Defendant misunderstands the elements required to plead an ADA claim.  Plaintiff need only allege that he can perform the essential functions of his job—*i.e.*, teaching seventh-grade students—with *or without* reasonable accommodations.  *Gaul*, 134 F.3d at 580 (noting the elements of a *prima facie* case of discrimination under the ADA).  Whether a plaintiff's disability "actually interferes" with his ability to work is, at this stage of the proceedings, inconsequential to a claim of discrimination under the ADA.  *See id.*

Finally, Defendant argues that Plaintiff has not alleged facts sufficient to plausibly show that he suffered an adverse employment action *as a result of* his disability.  Again, Defendant is mistaken.  As alleged, the discriminatory behavior directed at Plaintiff by KVMS principals and administrators began after Plaintiff's return from his first medical leave and led up to and precipitated Plaintiff's forced second medical leave and subsequent involuntary retirement.  These facts must be accepted as true at this stage.  Plaintiff also alleges that Principal Kircher told Plaintiff that Kircher's own father suffered from medical conditions similar to Plaintiff's, that his father

was now retired, and that Plaintiff's medical conditions were far worse.  In addition, Plaintiff "was facing unresolved disciplinary action when he went out on medical leave because of a medical condition caused or aggravated by the discriminatory treatment he was subjected to, which condition continued such that he was forced to retire."  (Pl.'s Resp. in Opp., ECF 8-1, at p. 7; *see also* Compl. Ex. A., ECF 1-1, ¶¶ r, s, t, u).  Further, just days after returning to work after contracting COVID-19, Plaintiff was told for the first time that he would be deposed in a legal matter regarding a Hatboro-Horsham student and was unable to review the student's file, actions which exacerbated Plaintiff's medical conditions and ultimately led to his doctor removing him from work.  Likewise, Plaintiff alleges that nondisabled teachers did not face similar disciplinary action or accusations.  Based on Plaintiff's allegations, this conduct was directed at him because of his medical conditions, and intended to make his work life intolerable and stressful such that he would be forced to resign.  Under these circumstances, Plaintiff has pleaded sufficient facts to plausibly show that he suffered an adverse employment action due to his disability.

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's ADA and PHRA disability discrimination claims is denied.

### B.  Hostile Work Environment

Plaintiff also asserts a claim for hostile work environment under the ADA based on his alleged disability.  Defendant argues Plaintiff has failed to allege facts sufficient to plausibly support the conclusion that his alleged discrimination was severe or pervasive, and that Plaintiff has failed to allege intentional discrimination because of his disability.  Defendant's argument is unpersuasive.

To state a claim under the ADA for hostile work environment, Plaintiff must allege facts sufficient to plausibly show that (1) he suffered intentional discrimination because of his disability,

(2) the discrimination was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment," (3) he was detrimentally affected by the discrimination, and (4) it would have detrimentally affected a reasonable person in h[is] position. *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 132 (E.D. Pa. 2020); *Mercer v. Se. Pa. Transit Auth.*, 26 F. Supp. 3d 432, 443 (E.D. Pa. 2014); *see also Walton*, 168 F.3d at 667 (concluding that a cause of action for workplace harassment exists under the ADA).

Notably, to sustain a claim for hostile work environment, the discrimination must be either severe *or* pervasive; the alleged discrimination need not be *both* severe *and* pervasive. *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017). Isolated instances may be severe enough to create a hostile work environment, and a less-severe series of instances may be pervasive enough to create a hostile work environment. *Id.* (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)). In deciding whether a plaintiff has sufficiently pleaded severe or pervasive discrimination, "the court must look [] at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Triangle Doughnuts*, 472 F. Supp. 3d at 132 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001)) (internal quotations omitted).

As noted, Defendant argues that Plaintiff has failed to plausibly allege that the discrimination he experienced was severe or pervasive. Defendant is, however, mistaken. In the complaint, Plaintiff has alleged numerous instances that interfered with his work performance. For example, he experienced threats of disciplinary action for unfounded accusations throughout his time at KVMS. Plaintiff further alleges he was subjected to an unwarranted disciplinary hearing without receiving any follow-up; was followed by a police cruiser at the behest of Principal Kircher

and experienced repeated, unwarranted classroom disruptions from Osborne; was falsely accused of having drugs on school property; and was falsely accused of using a racial slur. *See Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 404–07 (D.N.J. 2003) (noting false accusations were sufficient to support the EEOC finding discrimination for the complainant at the pre-litigation administrative exhaustion stage). Taking all of these allegations as true, this Court finds that Plaintiff has plausibly alleged facts sufficient to show that the discrimination he suffered was severe for purposes of his hostile work environment claims under the ADA. Likewise, Plaintiff has plausibly alleged facts sufficient to show that the discrimination was pervasive, as he alleges disparaging treatment by his supervisors and colleagues over a period of several years that made evident to Plaintiff that he was not a welcome member of KVMS.

Defendant also argues that Plaintiff has failed to allege facts to show that he was subjected to intentional discrimination because of his disability. This Court disagrees. In the complaint, Plaintiff alleges that he suffered multiple instances of discrimination over the course of his tenure at KVMS due to his disability. As discussed *supra*, Plaintiff has alleged facts sufficient to show discriminatory actions and conduct against and toward him that nondisabled teachers did not experience. This conduct commenced when Plaintiff returned to work from his first medical leave until the time of his final, involuntary medical leave. As pleaded, Plaintiff was falsely accused of various employment infractions on multiple occasions, wrongfully subjected to a disciplinary hearing, demeaned by Principal Kircher, and followed by the police in the parking lot at the behest of someone at KVMS—all after Kircher became aware of and commented about Plaintiff's medical conditions. *Cf. Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1082 (3d Cir. 1996) (noting that false accusations, coupled with racially charged comments, constituted evidence of a hostile work environment at the summary judgment stage). Thus, Plaintiff has sufficiently alleged

facts to support his claim that he was subjected to intentional discrimination. As such, Defendant's motion to dismiss Plaintiff's ADA and PHRA hostile work environment claims is denied.

**II.** **_ADEA Claims_**

    A. *Discrimination*

Plaintiff also asserts a discrimination claim under the ADEA. Defendant moves to dismiss this claim, arguing that Plaintiff has failed to allege facts sufficient to plausibly show that (1) he suffered an adverse employment action and (2) he was "replaced by a sufficiently younger person." (Def.'s Br., ECF 5-1, at p. 17). However, Defendant is incorrect in both arguments.

To state a viable age discrimination claim under the ADEA, the plaintiff must allege facts plausibly showing that: (1) he is at least forty years old; (2) he is qualified for the job; (3) he suffered an adverse employment action; and (4) the adverse employment action was more likely than not based on consideration of impermissible factors, in this instance age. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)). Here, as with Plaintiff's ADA claim, Plaintiff has alleged facts sufficient to plausibly show that he was constructively discharged from his teaching position. As such, contrary to Defendant's repeated argument, Plaintiff has sufficiently alleged an adverse employment action.

With respect to Defendant's second argument, *i.e.*, that Plaintiff failed to allege that he was replaced by a younger person, Defendant misstates the elements necessary to plead an ADEA claim. Contrary to Defendant's argument, Plaintiff need not allege he was replaced by a sufficiently younger person, but rather that the adverse employment action—*i.e.*, the constructive discharge—was more likely than not based on Defendant's consideration of an impermissible factor, such as age. *See Willis*, 808 F.3d at 644 ("Where the plaintiff is not directly replaced, the

fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'") (quoting *Pivirotto*, 191 F.3d at 352).[7]

Plaintiff proffers numerous factual allegations to support the inference that his constructive discharge was based on his age.  In the complaint, Plaintiff alleges that "younger" teachers were not subjected to the same treatment as Plaintiff by Principal Kircher, Assistant Principal Ewerth, and Guidance Counselor Osborne.  Plaintiff also offers two comparators, namely, women in their "late fifties or sixties" who Plaintiff alleges were similarly forced to retire before they were ready to do so.  (Compl. Ex. A, ECF 1, ¶¶ 9–10); *see Jenkins v. Polysciences, Inc.*, 2017 WL 1261689, at *2 (E.D. Pa Mar. 29, 2017) (citing *Greene v. V.I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014) ("In order to properly plead the fourth element [of an ADEA claim], the plaintiff can [] introduce evidence of comparators (*i.e.*, similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances) . . . .").

Notwithstanding, Defendant also argues that a supervisor questioning an employee about the employee's age and retirement does not constitute "evidence" of discrimination.  (Def.'s Br., ECF 5-1, at p. 17) (citing *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 512 (3d Cir. 2004)).  At the motion to dismiss stage, however, Principal Kircher's inquiry into Plaintiff's retirement supports an inference of discrimination.  *See Lamonde v. Bath Saver, Inc.*, 2022 WL 622739, at *4–5 (E.D. Pa. Mar. 3, 2022) (noting that a "backdrop" of questioning about retirement at the

---

[7]     The fourth element of an ADEA claim may also be sufficiently pleaded by alleging facts to support that the plaintiff was "ultimately replaced by a person sufficiently younger to permit an inference of age discrimination."  *Billet v. CIGNA Corp.*, 940 F.2d 812, 816 n.3 (3d Cir. 1991).

pleading stage supported an inference of discrimination sufficient to state a plausible hostile work environment claim).

For the foregoing reasons, Defendant's motion to dismiss with respect to Plaintiff's ADEA and PHRA age discrimination claims is denied.

### B.   Hostile Work Environment

Plaintiff also asserts a claim for hostile work environment under the ADEA.  Defendant argues that the mistreatment Plaintiff alleges is "neutral with respect to age" and indicative of a "bad working relationship" rather than because of Plaintiff's age.  (Def.'s Br., ECF 5-1, at p. 18) (citing *Howell v. Millersville Univ. of Pa.*, 283 F. Supp. 3d 309, 332 (E.D. Pa. 2017)).  Defendant also argues, as it did with Plaintiff's ADA hostile work environment claim, that Plaintiff has failed to allege severe or pervasive discrimination.  Plaintiff disagrees.

To state a claim under the ADEA for hostile work environment, Plaintiff must allege facts sufficient to plausibly show that:  (1) he suffered intentional discrimination because of his age; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability.  *Castleberry*, 863 F.3d at 263; *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 698 (3d Cir. 1995) (establishing that ADEA claims follow the elements of Title VII claims).   *Respondeat superior* liability generally requires that harassment come from a supervisor.  *See Huston v. Proctor & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).  However, employers may be liable for harassment from co-workers "if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action."  *Id.* (citing

*Weston v. Pennsylvania*, 251 F.3d 420, 427 (3d Cir. 2001); *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)).

For similar reasons discussed with respect to Plaintiff's ADA hostile work environment claim, Plaintiff's factual allegations satisfy the pleading requirements for an ADEA hostile work environment claim, as Plaintiff plausibly alleges harassment in connection with his age.  As noted, in the complaint, Plaintiff alleges two women over the age of forty were similarly forced into retirement as Plaintiff, and that he suffered continued mistreatment from Principal Kircher and assistant principals at KVMS.  For example, Plaintiff alleges Principal Kircher shouted down the hallways during the school day to Plaintiff, calling him a "pussy."  (Compl. Ex. A., ECF 1-1, ¶ e). Likewise, Principal Kircher, Assistant Principal Ewerth, and teacher Wendy King made comments to Plaintiff about his retirement.  Taking these and Plaintiff's other allegations as true, as this Court must, this Court finds Plaintiff has sufficiently pleaded facts sufficient to  show severe or pervasive discrimination in connection with his hostile work environment claim under the ADEA. Furthermore, *respondeat superior* liability can be inferred in the instant case because Principal Kircher and the various assistant principals who are alleged to have discriminated against Plaintiff were his supervisors.   There is no debate that Principal Kircher was Plaintiff's supervisor. Likewise, Plaintiff alleges that Guidance Counselor Osborne was a friend of Principal Kircher, who ostensibly knew of the discriminatory conduct coming from Osborne.[8]  Taking all of these allegations as true, Plaintiff has sufficiently alleged a hostile work environment claim under the ADEA.

---

[8]      For example, Plaintiff alleges that after he was followed by the police, an unnamed KVMS staff member overheard both Principal Kircher and Mr. Osborne talking about "having some fun with Stewart Gross."  (Compl. Ex. A, ECF 1-1, ¶ h).  This allegation suggests concert of action between the two, or at the very least that Principal Kircher was aware of Osborne's overall behavior.

Under the factual scenario pleaded, Defendant's motion to dismiss with respect to Plaintiff's hostile work environment claims under the ADEA and PHRA is denied.

**CONCLUSION**

For the reasons set forth, Defendant's motion to dismiss is denied in its entirety. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.